UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TERESSA ANGLINMATUMONA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-cv-572 (AJT/TRJ) |
| ) | |
| MICRON CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OPINION

In this retaliatory discharge action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, plaintiff Teressa Anglinmatumona has filed a Complaint against her former employer, Micron Corporation ("Micron"), alleging that she was discharged in response to her complaint about sexual harassment, a protected activity.[1]

This matter is before the Court on defendant's Motion for Summary Judgment [Doc. No. 42], which this Court took under advisement on April 24, 2012 [Doc. No. 52]. For the reasons stated herein, the Court grants defendant's motion for summary judgment.

## UNDISPUTED FACTS.[2]

On August 28, 2006, plaintiff began working for Micron as an engineer at its facility in Manassas, Virginia. Plaintiff's initial position was "Process Module Owner" in the Dry Etch

---

[1] Plaintiff has proceeded *pro se* in this action. The 29-page complaint does not clearly delineate her claims, but based on the allegations of the complaint and Plaintiff's opposition to the Motion for Summary Judgment, the Court concludes that plaintiff's claim is most appropriately construed as one of retaliatory discharge under Title VII. *See* Second Am. Compl. ¶ 20; *see e.g.*, Pl. Br. 2, ¶ 4.

[2] As discussed below, plaintiff has failed to provide a separately captioned section delineating what material facts she believes to be in dispute, as required by Local Civil Rule 56(B). Plaintiff also failed to support her opposition with citations to the evidentiary record. Unless otherwise noted, the Court therefore accepts as undisputed those facts set forth in defendant's statement of undisputed facts, which are supported by citations to the record.

Department. Her starting salary was $89,000 and she received pay raises to approximately $96,000, which she received until she was terminated. Shortly after she began, her immediate supervisors were Honjo Masuji and Harold Carter, the Section Manager of the Dry Etch Department.

Coworkers began complaining about plaintiff almost immediately upon commencement of her employment. On October 3, 2006, a supervisor in another department complained that plaintiff "was not very courteous to my night shift team member" and "was extremely demanding and was just short of being rude." Two days later, Masuji received an email from three other employees complaining about plaintiff's behavior. Those employees discovered an error with plaintiff's work, after which, as they recalled, "[w]e tried to explain this to the [plaintiff], but she didn't seem to want to cooperate." Masuji met with plaintiff on October 9, 2006, to discuss these incidents and suggest how plaintiff could work more cooperatively with others, but she refused to do so. Later, on January 30, 2007, Masuji met with plaintiff and attempted to discuss a project that plaintiff was working on; plaintiff responded to Masuji's suggestions with hostility, making it impossible to discuss and correct deficiencies in her work product. As a result of that meeting, Masuji sought an intervention from Carter to assist in articulating how plaintiff could improve her relationships with coworkers. On January 31, 2007, Carter, Masuji, and plaintiff met to discuss her behavior toward coworkers. At that meeting, plaintiff complained about Masuji's conduct. Plaintiff recalled at her deposition:

> I remember telling Mr. Carter how Honjo had mentioned something about having the green card or some stuff along that line so that – some of his friends or some stuff like that and how he was just very touchy-feely.

Plaintiff did not articulate what she meant by Masuji being "touchy-feely," but stated in her deposition that she also complained to Carter that Masuji touched her thigh and that Masuji made an inappropriate hand gesture where he clasped his hands together and rotated his

2

thumbs. *See* Def. Ex. 25, at 128-131, 136; Def. Ex. 22, ¶ 9. Plaintiff contends that her complaint about Masuji constituted protected activity and that she was later discharged in retaliation for that protected activity.

The complaints about plaintiff's inability to get along with her coworkers continued. On April 6, 2007, Masuji received a complaint from Micron employee Bill Nelson, whereby Nelson witnessed plaintiff harassing a coworker about some work. Nelson vented, "This is truly bad form. . . . If I were [the coworker] in this case I would be pretty upset and less than willing to lift a finger for Dry Etch to complete a goal." On April 9, 2007, another Micron employee, Justin Shields, emailed Carter complaining about plaintiff's hostility toward him and a coworker. Specifically, when Shields approached plaintiff about her unnecessary hostility, she responded "this is just the way I am." Other similar incidents occurred on July 26, 2007, July 31, 2007, August 7, 2007, and August 16, 2007. These led to several formal meetings with plaintiff regarding her tendency to act with hostility toward other Micron employees. Along with feedback from supervisors, Micron employees receive peer reviews where coworkers rate those who they work with. Plaintiff's two peer reviews, on May 23, 2007 and September 2, 2007, were very poor, particularly with respect to her ability to work well with others.

On September 26, 2007, plaintiff sent an email to Dawn Hutchinson, a human resources manager, alleging "sexual harassment and retaliation." The email outlined alleged tensions between her and Masuji, and included a complaint of sexual harassment against Masuji based on the same alleged conduct she described to Carter in their January 31, 2007 meeting. At Hutchison's request, she and plaintiff met to discuss plaintiff's sexual harassment allegations. At that meeting, Hutchison attempted to discuss the harassment

3

complaint, but plaintiff avoided the subject and explained that the issue had been "resolved." Plaintiff had also told Carter on August 7, 2007 that her January 31, 2007 complaint about Masuji had been resolved.

In September 2007, plaintiff was placed on a six-month training rotation. Plaintiff agreed to the rotation and described it as a "great opportunity" that she was excited about; plaintiff admitted in her deposition that the terms of her employment did not change with the reassignment. On October 28, 2007, shortly after she began the rotation, a coworker complained that she was confrontational. That same coworker complained the following January that she was uncooperative with peers. Due to plaintiff's continuing issues, Gary Capron, plaintiff's overall supervisor and manager of all engineers in the shift engineering department, met with her on January 25, 2008 and presented her with a "Corrective Action Notice," in which he described his concerns about plaintiff's inability to work with her peers.[3] That notice stated:

> 1. **Specific Problem:** Teressa is unable to effectively work with her peers and be part of the Fab 6: Dry Etch Team. Specifically she is unable to effectively communicate with team members, she isolates herself from the team, and she is disruptive to the team environment. These types of issues have been documented several times and they continue to re-occur.
>
> ***
>
> 2. **Improvement Plan:** Teressa must make improvements in her ability to be part of our team. She must recognize that there is a pattern of issues with several different people and that many people are complaining how difficult it is to work with her. She must recognize that she is extremely defensive, she has a very difficult time accepting responsibility for issues, and is very difficult to interact with. Teressa must make improvements in these areas and her teammates must recognize these improvements.

Plaintiff refused to sign the notice in compliance with the company's internal policy, which requires employees to sign an acknowledgement receipt of a Corrective Action Notice to

---

[3] Capron had knowledge of the complaints about plaintiff's behavior and had personally observed her behavior on the manufacturing floor.

ensure that the employee and her supervisor have the same understanding of what is expected of the employee. Based on her refusal to sign an acknowledgement of the Corrective Action Notice, Capron believed that she would not change her behavior and decided to terminate her employment with Micron. Capron and Carter met with plaintiff on January 30, 2008 and told her she was being discharged because of insubordinate and disruptive conduct, and presented her with a discharge sheet stating those reasons. Def. Ex. 19. Plaintiff now claims that she was discharged in retaliation for her January 31, 2007 complaint against Masuji, even though Capron did not know, and plaintiff never told him, of her complaint. Overall, during plaintiff's 17-month tenure at Micron there were no less than 11 documented complaints levied against her by coworkers, two poor peer evaluations, and at least eight meetings where supervisors attempted to address plaintiff's conduct with her.

## STANDARD OF REVIEW

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."

*Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

The nonmoving party may rebut the motion for summary judgment "by any of the kinds of evidentiary materials listed in Rule 56(c)." *Celotex*, 477 U.S. at 324. To overcome a motion for summary judgment, the nonmoving party "'may not rely merely on allegations or denials in its own pleadings' but must 'set out specific facts showing a genuine issue for trial.'" *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56(e)). To support a factual position, a party must cite to particular parts of the evidentiary record. Fed. R. Civ. P. 56(c). If the nonmoving party fails to properly support an assertion of fact, the Court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

Micron's motion for summary judgment contains a separate section that delineates the material facts it believes are not in dispute, as required by Local Civil Rule 56(B), and Micron's motion is supported by citations to the evidentiary record. Plaintiff's opposition, however, does not include a specifically captioned section listing all material facts as to which she contends there

exists a genuine issue in dispute, as required Local Civil Rule 56(B). That rule states that the "Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *See* Local Civil Rule 56(B). Further, while plaintiff argues that Micron's evidence-backed factual assertions are incorrect, plaintiff did not attach a single piece of evidence or cite to any evidence in the record in support of her opposition. The only evidence before the Court is the evidence that supports Micron's motion. Although documents filed *pro se* must be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2004), plaintiff here has completely failed to properly oppose defendant's motion for summary judgment. Because plaintiff has not properly supported any of her factual assertions, the Court will proceed by considering the defendant's facts undisputed for purposes of the motion and analyze whether the defendant is entitled to summary judgment based on those undisputed facts. *See* Fed. R. Civ. P. 56(e)(2)-(3); Local Civil Rule 56(B).

## ANALYSIS

A retaliation claim in violation of Title VII is analyzed within the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas*. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). First, plaintiff must establish by a preponderance of the evidence a prima facie case for retaliation. *Id.* If established, Micron has the burden of production to rebut the presumption of retaliation by providing a non-retaliatory reason for the adverse employment action. *Id.* If Micron is able satisfy its burden, then the presumption of discrimination "drops from the case" and plaintiff has the ultimate burden of proving that she was fired in retaliation. *Id.* (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.10 (1981))

To establish a prima facie case of retaliation "a plaintiff must prove three elements: (1) that she engaged in protected activity; (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action." *Id.* (citing *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745, 754 (4th Cir. 1996)). First, plaintiff has to burden to establish by a preponderance of the *evidence* her prima facie case; however, plaintiff has not supported her memorandum with *any* evidence so her claim fails at the outset because she cannot shift the burden to Micron. *See Celotex*, 477 U.S. at 325. Nevertheless, the Court will look to the evidence in the record before the Court to determine whether a prima facie case can be made out for plaintiff.

Plaintiff complained on January 31, 2007 that (1) Masuji touched her thigh, (2) he made a hand gesture which she found inappropriate, and (3) he was a "touchy-feely" person. The Court will assume, without deciding, that her complaint was a protected activity and that, because she was fired in 2008, an adverse employment action was taken against her. However, the evidence is insufficient to allow any reasonable fact finder to conclude that there was causal link between her protected activity and her discharge.

First, plaintiff herself admitted during a counseling meeting with Carter in August 2007, and during her meeting with Hutchison on September 27, 2007, that her complaint against Mansuji had been resolved, weakening any inference that might have been otherwise supported causality.

Second, Capron, the Micron representative that decided to discharge plaintiff, had no knowledge of her prior complaint. If the relevant decision maker is unaware of the protected activity, then the plaintiff cannot establish the necessary causal link between that protected activity and the adverse employment action. *See Dowe v. Total Action Against*

8

*Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."). Because Capron did not know that plaintiff had engaged in an allegedly protected activity, there can be no causal link between the activity and the discharge.[4]

Third, the temporal proximity between plaintiff's complaint and her discharge was too attenuated to support a finding of causation, even if Capron had knowledge of plaintiff's complaint against Mansuji a year earlier. Plaintiff's complaint came on January 31, 2007 and her Corrective Action Notice and discharge came in late January 2008, almost exactly a year later.[5] This is simply too long a period of time to permit an inference of causality. *See King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (explaining that a two-month delay between the protected activity and the adverse action is "sufficiently long so as to weaken the inference of causation," though that fact by itself does not render a prima facie claim unsuccessful); *Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (finding that a period of three to four months between the complaint and the adverse employment action was "too long to establish a causal connection by temporal proximity

---

[4] Plaintiff argues, "Contrary; to micron's statement; Mr. Gary Capron had knowledge that *pro se* Plaintiff had made several complaints of harassment; since she followed through with her supervisor's request to discuss the matter with him [*sic*]." Pl. Br. 6. However, plaintiff provides no citations to the record that would support this assertion and has therefore failed to demonstrate a genuine dispute as to any material fact.

[5] Plaintiff argues that her six-month training rotation was an adverse employment action. However, by her own admission, she described the rotation as a "new opportunity" that she was excited about and that she did not regard this rotation as a change in terms of her employment. The Court therefore concludes as a matter of law that the only adverse employment action plaintiff experienced was her discharge. *See Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999).

alone."). In short, "a lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." *Dowe*, 145 F.3d at 657. For the above reasons, the Court finds and concludes that as a matter of law plaintiff has failed to establish a prima facie case for a retaliatory discharge.

Even assuming that plaintiff has made out a prima facie case for discrimination, defendant has adequately rebutted that presumption as a matter of law by providing a legitimate, nondiscriminatory business reason for the discharge. To meet its burden under the *McDonnell Douglas* test, Micron need only make "an initial showing" that its decision to discharge plaintiff was not for retaliatory reasons. This burden is one of production and not of persuasion. *Reeves v. Sanderson Plumbing Prods., Inc*, 530 U.S. 133, 142 (2000). If the defendant satisfies its burden, then the plaintiff has the ultimate burden to prove that retaliation was the true motive in her discharge. *Laughlin*, 149 F.3d at 258. Micron has provided evidence of substantial and repeated instances where coworkers complained of plaintiff's conduct in the workplace. Beginning almost immediately upon her employment with Micron, and spanning the entire period of that employment, plaintiff had difficulties working with her peers and she continually disrupted the workplace. Her conduct led to several meetings with supervisors to address her problems. Finally, on January 25, 2008, Capron issued a Corrective Action Notice, which described plaintiff's conduct and what she needed to do to avoid further disciplinary action and possible termination. Def. Ex. 18. Plaintiff refused to accept the corrective action and as a result of her refusal, Capron concluded that there was no alternative but to discharge her. Def. Ex. 24, ¶¶ 11-12. Based

on these undisputed facts, the Court finds as a matter of law that Micron has established a non-discriminatory reason for plaintiff's discharge

With the burden shifted back to plaintiff, the Court finds that she has failed to create a genuine issue of material fact concerning whether these proffered legitimate business reasons were a pretext for retaliation. Again, plaintiff has not cited to any evidence in the record in support of a claim of pretext; and because she has not done so, there is no evidence to demonstrate that she was discharged because she engaged in a protected activity.[6] The Court therefore concludes that, even if the Court were to find that plaintiff has made a prima facie case for retaliatory discharge, Micron has provided a satisfactory, and well-supported, legitimate business reason for discharging plaintiff and she has failed to raise sufficient evidence to allow a reasonable fact finder to find that such reasons were a pretext for illegal retaliation.

## CONCLUSION

For the above reasons, the Court will grant defendant's motion for summary judgment on multiple grounds. Plaintiff has failed to establish a prima facie case for retaliatory discharge under the *McDonnell Douglas* test because there is insufficient evidence to establish a causal link between plaintiff's complaint and her discharge almost a year later. Alternatively, the Court concludes that even if plaintiff had made out a prima facie case, Micron has articulated a legitimate business reason for discharging plaintiff and, with the burden shifting back to plaintiff, she has failed to carry her burden in establishing

---

[6] Plaintiff's contention that "[t]he reasons given for *pro se* Plaintiff['s] unlawful termination [are] 'untrue'" is insufficient, without any cited evidence, to create a material issue of fact. *See* Pl. Br. 5, ¶ 3.

11

that the real reason for her discharge was retaliation. Therefore, Micron's motion for summary judgment is granted.

The Court will issue an appropriate Order.

The Clerk is directed to forward copies of this Memorandum Opinion to all counsel of record and to plaintiff Teressa Anglinmatumona, *pro se.*

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
June 4, 2012